(C.D. 2324)

B. A. ITTMANN *v.* UNITED STATES

United States Customs Court, Second Division

(Decided March 27, 1962)

*Irvin R. McClellan* for the plaintiff.

*William H. Orrick, Jr.,* Assistant Attorney General (*William J. Vitale* and *Richard H. Welsh,* trial attorneys), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges; FORD, J., concurring

LAWRENCE, Judge: The nine protests enumerated in the schedule attached to and made a part of this decision relate to importations of textile machinery and parts, which were classified by the collector of customs as "other" textile machinery and parts thereof in paragraph 372 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 372), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, and duty was imposed thereon at the rate of 15 per centum ad valorem.

Plaintiff claims that said machines and parts should be classified in said paragraph 372, as modified, *supra,* as textile machinery and parts thereof for textile manufacturing or processing prior to the making of fabrics and dutiable at the rate of 10 per centum ad valorem.

The pertinent text of paragraph 372, as modified, *supra,* reads as follows:

Textile machinery, finished or unfinished, not specially provided for (except looms and machinery for making synthetic textile filaments, bands, strips, or sheets):

For textile manufacturing or processing prior to the making of fabrics or woven, knit, crocheted, or felt articles not made from fabrics (except bleaching, printing, dyeing, or finishing machinery):

For manufacturing or processing vegetable fibers (except winding, beaming, warping and slashing machinery, and combinations thereof)_____ 10% ad val.

Circular combs commonly known as "Noble" or "Bradford" combs_____ 40% ad val.

Other_____ 20% ad val.

Bleaching, printing, dyeing, or finishing_____ 20% ad val.

Other_____ 15% ad val.

\* \* \* \* \* \* \*

Parts, not specially provided for, wholly or in chief value of metal or porcelain, of articles provided for in any item 372 of this Part:

| | |
|---|---|
| Textile pins | 20% ad val. |
| Other | The same rate of duty as the articles of which they are parts |

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

As stated in plaintiff's brief, "The imported machines comprise a series of textile machines for establishing a complete mill system layout of textile machinery for processing raw sisal vegetable fiber into yarn."

Specifically, the importations consist of first, second, third, and two fourth goods (or breaker) machines; first, second, and third drawing frames; gill spinners; and spooling machines, which operate in conjunction with the gill spinners.

The salient facts of the case are not in dispute.

The testimony establishes that the subject machinery processes vegetable fibers, such as sisal and henequen, and produces therefrom yarn or twine, represented by exhibits 13 through 16, which is sold, known, and used exclusively as baler or binder twine. Inasmuch as the yarn or twine is oiled in the manufacturing process (on the number one goods machine), it is not used for weaving. An attempt was made by plaintiff to demonstrate that the yarn could be used for weaving, and two exhibits, 21 and 22, were introduced to illustrate rugs woven of such yarn. However, it is clear from the evidence that said rugs were made as an experiment to show that it was possible, although not practical, to weave said yarn. In other words, it would not be commercially feasible to do so.

Plaintiff relies upon the decision of this court in *The A. W. Fenton Co., Inc.*, and *American Manufacturing Co.* v. *United States*, 34 Cust. Ct. 202, C.D. 1705 (1955). We there held that an importation of so-called pressing rollers for use in connection with drawing frames in the treatment of vegetable fibers prior to the conversion of the fibers into yarn by other machinery, such yarn being used in vast quantities in the production of woven fabrics, such as rugs, bags, backing, upholstery fabrics, and carpet backing, as well as in the manufacture of cordage, which latter has been at times extensively used in weaving, properly came within the provisions of paragraph 372 of the tariff act, as modified, for textile machinery for processing vegetable fibers prior to the making of fabrics.

The record in the *Fenton* case was incorporated as a part of the record herein.

Plaintiff contends that since it is admitted by the Government that the machinery with which the pressing rollers of the *Fenton* case became a part was used for the textile manufacturing or processing of vegetable fibers prior to the making of fabrics, it is similar to the machinery in the instant case and that the tariff classification should be the same in both cases.

However, the use of the end products of the machines in the two cases compels a different tariff classification of the machines. The statute involved in this proceeding provides for different types of textile machinery. The provision relied upon by plaintiff provides for textile machinery employed in the manufacturing or processing of vegetable fibers "prior to the making of fabrics or woven, knit, crocheted, or felt articles not made from fabrics," thereby making use of the end product the decisive factor in determining the classification of the machinery. The statute then provides for textile machinery other than that which manufactures or processes vegetable fibers prior to the making of fabrics.

While apparent hardship might seem to flow from the classification of textile machinery of similar types at different rates of duty, depending upon the ultimate product of the machines, nevertheless, Congress has made that distinction with respect to classification of textile machinery in paragraph 372.

Moreover, the changing use of machinery may reasonably effect a change in tariff classification, and the use at the time of importation would be decisive. *United States* v. *The Baltimore & Ohio R.R. Co. a/c United China & Glass Company*, 47 C.C.P.A. (Customs) 1, C.A.D. 719.

An examination of the record in the *Fenton* case discloses that the machinery referred to therein was imported in 1948 and, as pointed out, *supra*, that machinery was chiefly used for textile manufacturing or processing of vegetable fibers prior to the making of fabrics. The machinery in the instant case was imported during the years 1955 and 1956, and the proof herein indicates that the use of said machinery has changed from that of processing vegetable fibers prior to making fabrics to machinery processing vegetable fibers for the production of baler twine. As a matter of fact, there is evidence that the use of the machinery imported by the American Manufacturing Co., the real party in interest in the *Fenton case*, is no longer used for the purpose of manufacturing vegetable fibers prior to the making of fabrics. This is disclosed by the testimony of John D. McGuire, who had been in the employ of the American Manufac-

turing Co. for 58 years, the principal witness in the *Fenton* case, and who testified herein, when asked if his firm was still making fabrics from vegetable fibers, "No. We are in synthetics now. The synthetic business now," and when asked if they used the same machines, the witness stated, "Yes, exclusive of the drawing frames. We are using polyethylene and polyrophylene."

In this connection, it is significant to note that the provision for textile machinery in paragraph 372, as modified, *supra*, excepts from its terms "* * * machinery for making synthetic textile filaments, bands, strips, or sheets."

It having been shown that the end product produced by the imported machine is baler twine, we are of the opinion that the articles in issue were properly classified by the collector of customs as "other" textile machinery and parts thereof in paragraph 372 of the Tariff Act of 1930, as modified, *supra*, rather than as textile machinery for textile manufacturing or processing prior to the making of fabrics in said paragraph 372, as modified, as claimed by plaintiff.

Upon the undisputed facts of record and for the reasons above stated, the claim in the protests is overruled.

Judgment will issue accordingly.

CONCURRING OPINION

FORD, Judge: I concur in the result.